MARY E. LeSAGE *et al.* v. RUFUS SWITZER, *Trustee, et al.*

(No. 8149)

Submitted November 5, 1935. Decided December 3, 1935.

*Peyton, Winters & Hereford,* for appellants.
*G. M. McLaughlin* and *Walter M. Parker,* for appellees.

HATCHER, JUDGE:

Sale of property under a deed of trust executed by Mary E.

LeSage, Anna H. LeSage and their respective husbands (hereinafter referred to as plaintiffs) in 1909 to secure a note was not attempted until 1934. This suit was brought by the plaintiffs to enjoin the sale on the sole ground that all rights under the deed had been extinguished by Acts 1921, chapter 65, amended and reenacted in Code 1931, 55-2-5. The circuit court dismissed the bill, and the plaintiffs appealed.

The part of the Act of 1921 pertinent here follows: ''No lien, reserved on the face of any conveyance of real estate, or lien created by any deed of trust or mortgage on real estate, shall be valid or binding as a lien on such real estate after the expiration of twenty years from the date on which the debt or obligation secured thereby becomes due; and the provisions of this Act shall apply with like effect to every such lien now existing, as well as to every such lien hereafter reserved or created.''

As amended and reenacted in 1931, the Act provided that the limitation of twenty years should run from the original due date of the debt secured, and that no extension or renewal of the debt should enable the lien to survive the limitation.

It seems worth while to preface this discussion with a brief statement of the rationale of ordinary statutes of limitations. It is hornbook law that a state ''may organize its judicial tribunals according to its notions of policy, and may prescribe the time within which suits shall be litigated in its courts.'' 17 R. C. L., subject Limitation of Actions, sec. 7. The ordinary statute of limitations does not *qualify* or *extinguish* directly a single substantive right arising from a contract, but merely withdraws from the parties, after a specified period, the privilege of using the courts to enforce the contract. 17 R. C. L., *supra,* sec. 10; Cooley Const. Limitations (8th Ed.), p. 760, *et seq.;* Black Const. Prohibitions, sec. 150. After the statute has run against a debt, a creditor remains entitled to use any lawful means available for collecting his debt which does not involve court action. Williston on Contracts, sec. 2002; Minor on Real Property (2d Ed.), sec. 611; *Roots* v. *Salt Co.,* 27 W. Va. 483, 494; *Hull* v. *Hull,* 35 W. Va. 155, 165, 13 S. E. 49, 29 Am. St. Rep. 800; *Evans* v. *Johnston,* 39 W. Va. 299,

19 S. E. 623, 23 L. R. A. 737, 45 Am. St. Rep. 912; *Morgan* v. *Coal Co.*, 97 W. Va. 83, 97, 124 S. E. 591. If secured by a deed of trust, he may still have the trust enforced, since sale by the trustee (under the deed) requires no assistance from the courts. *Goldfrank* v. *Young*, 64 Tex. 432; *Menzel* v. *Hinton*, 132 N. C. 660, 44 S. E. 385, 95 Am. St. Rep. 647; *Booker* v. *Armstrong*, 93 Mo. 49, 4 S. W. 727; *Grant* v. *Burr*, 54 Cal. 298; *Criss* v. *Criss*, 28 W. Va. 388, 396. There is no controversy over these abstractions. Plaintiff's brief uses them as "historic background" to emphasize the innovations on limitation statutes contained in the following provisions of the Act of 1921: "No lien * * * shall be valid * * * after the expiration of twenty years, * * * and the provisions of this Act shall apply * * * to every such lien now existing." Thus instead of the limitation relating to court action on liens as other statutes had done, this Act proposed to invalidate the liens themselves at the termination of the specified period. Instead of being prospective as ordinary statutes are, this Act proposed to be retroactive. So far as the Act is prospective only, there is no challenge. So far as it would be retroactive, it is confronted by the following inhibition of the Constitution of the United States, Article I, section 10: "No state shall * * * pass any * * * law impairing the obligation of contracts." The Act is also confronted by a like inhibition in the Constitution of West Virginia, Article III, section 4.

We have found no clearer conception of the purpose of this inhibition than that expressed by Associate Justice Trimble in *Ogden* v. *Saunders*, 12 Wheat. (U. S.) 213, 327, 6 L. Ed. 606, as follows: "The great principle intended to be established by the constitution, was the inviolability of the *obligation* of contracts, as the obligation existed and was recognized by the laws in force at the time the contracts were made. It furnished to the legislatures of the States a simple and obvious rule of justice, which, * * * whilst it leaves them at full liberty to legislate upon the subject of all future contracts, and assign to them either no obligation, or such qualified obligation as, in their opinion, may consist with sound policy, and the good of the people; it prohibits them from retrospecting upon existing obligations, upon any pretext what-

ever.'' That conception represented the minority view at that time, but within a generation it became the accepted doctrine of the Court. See *Bronson* v. *Kinzie*, 1 Howard (U. S.) 311, 319-320, 11 L. Ed. 143; *McCracken* v. *Hayward*, 2 Howard 608, 612-3, 11 L. Ed. 397; *Von Hoffman* v. *Quincy*, 4 Wall. (U. S.) 535, 550, 18 L. Ed. 403; *Seibert* v. *Lewis*, 122 U. S. 284, 294, 7 S. Ct. 1190, 30 L. Ed. 1161; *McGahey* v. *Virginia*, 135 U. S. 662, 685, 693, 10 S. Ct. 972, 34 L. Ed. 304.

In 1909, when the instant deed of trust was executed, there was no statutory limitation on the period of its enforcement, though at that time the law would indulge a rebuttable presumption that a debt secured by a deed of trust was paid after the expiration of twenty years. *Criss* v. *Criss, supra,* 403-4. The law, as it was then, entered into the proposal of plaintiffs to borrow the money as well as into the acceptance thereof by the creditor. The minds of the parties met under that law. It became a component part of the contract. The creditor is entitled to have the contract enforced according to the law of the contract. This is a fundamental rule of the common law and is recognized in West Virginia as well as by the federal authorities. ''The law at the time of the contract is part of it.'' *State* v. *Nutter,* 44 W. Va. 385, 30 S. E. 67. Accord: *Carlton Co.* v. *Rr. Co.,* 106 W. Va. 126, 133, 145 S. E. 42; *State* v. *Ins. Co.,* 114 W. Va. 109, 170 S. E. 909, 91 A. L. R. 1482; *Huntington Corp.* v. *City of Huntington,* 115 W. Va. 531 177 S. E. 290. A subsequent law, such as that of 1921, limiting the life of a deed of trust would patently change (impair) the terms of the deed of trust herein and therefore would violate the Constitution. *Robinson* v. *Magee,* 9 Cal. 81, 70 Am. Dec. 638; *McCracken* v. *Moody,* 33 Ark. 81. The two cases just cited do not relate to statutes closely analogous to the Act of 1921, but they, as well as *Bronson* v. *Kinzie, supra,* illustrate the judicial view of statutes which seriously affect substantial contract rights. The *Bronson* case involved an Illinois Act forbidding a foreclosure sale of prior mortgaged property unless two-thirds of its appraised value was bid, and extending the mortgagor's period of redemption for twelve months after the sale. The Supreme Court declared the Act to be unconstitutional because it would have modified the sub-

sisting legal rights of the parties to the mortgage contract, saying: "When this contract was made, no statute had been passed by the State changing the rules of law and equity in relation to a contract of this kind. * * * and it must be governed and the rights of the parties under it measured by the rules above stated. They were the laws of Illinois at that time; and therefore entered into the contract and formed a part of it, without any express stipulation to that effect in the deed. * * * any subsequent law, impairing the rights thus acquired impairs the obligations which the contract imposed, * * * and is prohibited by the Constitution." Further illustration is afforded by our own decision in *Staud* v. *Sill*, 114 W. Va. 208, 212, 171 S. E. 428. That case involved consideration of chapter 34, Acts Regular Session 1933, which required a trustee to obtain judicial confirmation of a sale under a trust deed. The act was held to lessen "in some degree" the value of the creditor's right under the deed of trust and thereby to impair the obligation of his contract. A loan secured by a satisfactory lien on real estate for an unlimited period (as in the instant suit) giving the creditor the right to await a favorable market in case of foreclosure is obviously more valuable than a lien for a limited period; for it is easily conceivable that market conditions at the end of the limitation might make foreclosure very undesirable and in some instances positively disastrous to both parties to the loan. In *Planters Bank* v. *Sharp*, 6 Howard (U. S.) 301, 327, 12 L. Ed. 447 (cited in the *Staud* case), the court said: "One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, *dispensing with any part of its force.*" When a force theretofore unlimited and not dependent on court action—such as. the power of enforcing the lien of a deed of trust through sale by the trustee—is circumscribed, as the Act of 1921, proposes, a *material* part of the force is necessarily dispensed with.

Plaintiffs' brief quotes from *Terry* v. *Anderson*, 95 U. S. 628, 632, 24 L. Ed. 365, the following sentence seemingly

opposing the above doctrine: "This court has often decided that statutes of limitation affecting existing rights are not unconstitutional." The context shows clearly, however, that the sentence was carelessly drawn, and that the phrase "existing rights" meant *existing rights of court action.*

We recognize a nice distinction between the obligation of a contract and its remedy. Where the obligation is not impaired, the remedy may be reasonably modified "as the wisdom of the nation shall direct." *Sturges* v. *Crowninshield,* 4 Wheat. 200, 4 L. Ed. 529. Wade on Retroactive Laws, sec. 224; 12 C. J., subject, Constitutional Law, sec. 757; Cooley, *supra,* p. 554, *et seq.* Pursuant to that qualification, the Minnesota Mortgage Moratorium Law was upheld in *Home B. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481. That decision, however, expressly repudiates any inclination whatever to permit legislative destruction of contracts. It asserts merely the reserved (police) power of the state to suspend temporarily the enforcement of a contract when necessary "to protect the vital interests of the community." The Minnesota Law was differentiated from the legislation condemned in *Bronson* v. *Kinzie, supra,* and was upheld in the *Blaisdell* case because the relief provided by that Law was *temporary* and "appropriate to the emergency," had "regard to the interest of mortgagees as well as to the interest of mortgagors," and was administered by a court of equity "only upon reasonable conditions." Plaintiffs' brief relies on the *Blaisdell* decision. But the specific reasons advanced therein for upholding the Minnesota Law have no application to the West Virginia Act. The only reason suggested in plaintiffs' brief for the passage of the Act is that a purchaser of real estate, upon which a trust deed executed twenty years before was unreleased, might be assured that his purchase was rid of the lien. We do not conceive that the great reserved (police) power of the State— reserved to meet a public emergency as in the *Blaisdell* case— should be exercised merely to quiet the apprehensions of the occasional if not rare purchaser under the suggested circumstances. On the exercise of police power, see generally *Milkint* v. *McNeeley,* 113 W. Va. 804, 807-8, 169 S. E. 790. Conse-

quently we are of opinion that the Act of 1921 both in its original form and as amended in 1931, infringes the Constitution of the United States as well as the Constitution of West Virginia, so far as the Act would invalidate material lawful rights incident to a prior deed of trust.

Under the law effective when the deed of trust was executed (1909), the legal presumption of payment arising at the expiration of twenty years could be rebutted by satisfactory proof that the debt had not been paid. *Criss* v. *Criss, supra.* More than a month before the expiration of the twenty year period following the maturity of plaintiffs' note, they conveyed to Biern & Frank, Inc., the property included in the instant trust deed (taking back from their grantee a trust deed to secure to them part of the purchase price, some of which has not been paid). As part of the consideration for the conveyance to Biern & Frank, Inc., the plaintiffs specifically required their grantee to assume the payment of their note secured by the instant deed of trust. On the day the twenty year period would have expired, the grantee paid up all past due interest and renewed the note (payable one year after date). Following which the grantee kept the interest paid for several years. It is "well settled" that the acts of the plaintiffs and their grantee (because of its privity with them, *McClaugherty* v. *Croft*, 43 W. Va. 270, 27 S. E. 246; *Fitzgerald* v. *Flanagan,* 155 Ia. 217, 225-6, 135 N. W. 738, Ann. Cas. 1914C, 1104) laid any presumption of payment of the debt (plaintiffs do not even advance the presumption), and in fact renewed its existence. Annotation 18 A. L. R. 1028. For supporting cases based on different lines of thought, see *Daniels* v. *Johnson,* 129 Cal. 415, 61 P. 1107, 79 Am. St. Rep. 123, and *Schmucker* v. *Sibert,* 18 Kan. 104, 26 Am. Rep. 765.

The decree of the circuit court is accordingly affirmed.

*Affirmed.*